Good morning and may it please the court. My name is Corey Manti and I'm representing the United States from the District of Arizona. I'll reserve three minutes for rebuttal and I'll watch my time. Thank you. This court should reverse the district court suppression order that suppressed virtually all of the evidence in this bribery case. Its suppression ruling misapplied Franks' two strict requirements of materiality and recklessness and it compounded its errors under necessity by overruling the issuing judge's necessity finding which was supported by the record. This suppression ruling should be reversed on all three grounds. First of all, there was no Franks violation because any omission that the district court identified was immaterial to probable cause regarding the pharmacy property and this is the first element that the government will focus primarily on, although the other elements will be addressed. Counselor, you spent a lot of focus on materiality, but I suppose as a logical matter, before we get to materiality, could you address the question of whether there was a misrepresentation and if so, if it was reckless? Because I think in your brief, you sort of conflate that question with the materiality question and just logically, let's start with that. Do you think there was a misrepresentation here and if so, what's your argument that there was not recklessness? So two points, your honor. Obviously, the reckless disregard analysis is related and relevant to the government's first argument on materiality. So our position would be that there would be no reckless disregard of the truth and no Franks violation under the second element. Any omission would have been perhaps an oversight or negligence. We were dealing below with a very complicated tax scheme and indeed, the defense needed expert testimony on this scheme. The nuances of the property tax law and whether a tax notice was due on the pharmacy property wasn't a simple issue. So our position on the second element of recklessness that any omission regarding whether a tax notice was due or whether Fuentes can manipulate that notice was not made in reckless disregard of the truth. This was not a simple matter. I hear your argument, but as I read the explication of Arizona law in the defendant's brief, it seemed to be pretty straightforward and it seemed to be a sensible explanation of the timelines presented under Arizona law. I don't think in your briefing, you really took on the issue of what Arizona law said. Maybe you don't have any dispute with it, but it seemed to me that under the plain language of the between the CI and Fuentes that not only was there not a notice of delinquency due, but the tally hadn't happened. We were months in advance of the deadline by which the second half year taxes would even be due. So do you disagree with that reading of Arizona law? No, Your Honor. We don't dispute on appeal or even below that a notice was not due at that time. Again, the fact that that information was not provided in the affidavit by the special agent, again, wasn't made in reckless disregard of the truth. That omission by itself was not made in reckless disregard of the truth. And that's because Arizona law is complicated. Correct. The agent wouldn't be expected to know it. Also, Your Honor, and that is a good transition point to the lead argument, which is the fact that any omission was immaterial to probable cause in this case. Well, let me let me ask you that. I know you have some thoughts to share on that. But when we look at the district court's order, one of the things the district court focused on was official act. And again, as I look at your brief, I don't see a crisp indication of what in the government's view the official act or official acts were as reflected in the affidavit. Were they were the official acts limited to the favor that the treasurer supposedly did for Mr. Fuentes? Or what is the government's theory of official act as it pertains to the affidavit? It would be broader. So the essence would be that there was a scheme in terms of Fuentes agreement to pressure or advise the Santa Cruz treasurer. So it would actually go beyond the putting pressure or advice in terms of the delinquency notice. The real scheme here was the fact that Fuentes was pressuring and advising for the CI to obtain the pharmacy property. So the scope of the scheme. OK, but if we were to focus so the scheme that can be sort of an umbrella that encompasses lots of theories or concepts. But what are the I mean, when we think about official act, we're guided by the Supreme Court's language and McDonald and McDonald's very concrete about what type of act amounts to an official act. So using that that standard of McDonald, what precise official acts is the affidavit contemplating in connection with the scheme that you describe? So McDonald refers to, well, I would say stepping back a little bit. This wasn't something like in McDonald where it's just setting up a hearing, have a conversation or things like that. We were going beyond the contours of McDonald and the case of Kimbrough, where the Fuentes is actually trying to manipulate the process. So we're going beyond. OK, but again, what are the what are the precise official acts that you have in mind as being reflected in the affidavit? So I would the focus of the affidavit was on the delaying notice of the tax delinquency. So we would focus on that. But I would note that the scheme was broader than that. It was right. So let's say I'm struggling with the same thing. Let's say there is an alleged scheme that survives once the Frank's allegations, Frank's allegations are stricken. As I read the application, the only factual link between the treasurer and the scheme is that delinquency notice. Right. So nothing else, nothing else links the treasurer to the  Well, that was the basis of the affidavit. Yes, Your Honor. Right. And so when the factual link is then stricken, what's left? I would say just the general scheme, but no link between that scheme and the treasurer. I would rely on the fact that it doesn't matter that it was impossible that this delay, this notice could be delayed under this case under Kimbrough and under the Supreme Court precedent impossibility. Right. I'm not focusing on impossibility. So perhaps I didn't state my question. Well, what I'm saying is that assuming that the delinquency notice allegations are stricken, I know you're not conceding that first Frank's issue, but assuming that stricken, what is the factual link that's left between the treasurer and the scheme that you're describing in broad terms? I don't see that. So if you can help me. It would be, I would establish that link with the remaining allegations because that goes to the adequacy of where the probable cause has been alleged. Well, I would say, Your Honor, that it would be, I would rely on the magistrate courts, the magistrate judges ruling in paragraphs 86, 88, 99 B and C. And that in terms, that was the scheme that was alleged in. Just a scheme, but no factual link to the treasurer. I don't think that's enough. Well, Your Honor, I would push back on that point in terms of what matters in this case is in terms of the agreement that was alleged by the affidavit. We have a specific public official had identified a specific matter involving the tax handling of the pharmacy property, and then it also described the agreement. So under Kimbrough, McDonald, and other cases, that would be sufficient to allege sufficiently a bribery scheme. In terms of if the pharmacy property allegation or the delay of notice was struck, that didn't actually alter the bribery agreement that was sufficiently alleged in the affidavit. Okay. Can I have you go back to the first issue? What's the standard review as to the district court's findings on the reckless disregard issue? Clear error, Your Honor. So we'd have to find that the findings that the statements were recklessly omitted were clearly erroneous. Correct. And the government's position on that would be obviously a clear error requires a definite and firm conviction that an error has been made based on the lead argument that any omission was immaterial plus the other circumstances and arguments mentioned in the government's briefing. We would say that the clear error standard wouldn't be an impediment for reversal on the second prong of Frank's. In terms of also the necessity determination, the district court erred in that respect in overruling the issuing judge's necessity determination, which was complete and accurate. If I can circle back, before we get to necessity, we're still looking at probable cause in the affidavit. And of course, the PC has two parts, PC to believe a crime has been committed, and then PC to believe that the thing to be searched, or in this case, the line to be intercepted, contain evidence of the crime. The defendant in his answer brief faults the government for really not tackling the second one of those questions. And I didn't see in your reply brief, you really pulled it together. So what is the, perhaps rather than referring to the evidence, you can just summarize for me, what is the evidence in the affidavit that supports PC as to target telephone one? So in terms of the second probable cause requirement, really the district court's cited that requirement as part of its overarching ruling regarding official acts. So once that argument falls, really that secondary basis. Well, I perhaps have a different reading of the district court's opinion, but if my reading were correct, what would be the evidence in the affidavit that supports PC for target telephone number one? Because the key conversations we're talking about, the two in February and then one in April, they're all, they're face-to-face, they're in a meeting room or Mr. Fuentes is driving around with CI1. So what is it that makes the phone line dirty, for lack of a better word, for purposes of the bribery scheme, as reflected in the affidavit? And I'm sorry, Your Honor, in terms of the affidavit, there are instances in which Fuentes and the CI do speak over the phone. I believe there's one conversation that's basically Fuentes reassures the CI that everything is all right, and there was a text message exchange first and then followed by a voice call. So we'd rely on those portions of the affidavit in which there are, there is a use of a phone, the target phone, and also the discussion of the scheme and discussion about the pharmacy property specifically is part of that. All right. And then in terms of the necessity analysis, I'll be brief on that. There was ample material in the affidavit to show necessity as the issuing judge correctly determined. The district court's analysis was based on its scamming characterization, and it really didn't focus on the elements of the bribery offense or of necessity. What's the best evidence of necessity in the affidavit? The fact that this was a long-term investigation of nearly two years. There were, again, confidential informants, undercover work, public records and financial records reviews, and that did not build a full case or an effective case for bribery. But none of that is really specific to the conversations between the CI and Mr. Fuentes or the putative phone conversations between Mr. Fuentes and the treasurer, right? I mean, those are just sort of general considerations. And again, Your Honor, that would be, I would agree with that to a certain extent, but obviously that was part of the investigation, the FBI's investigation into this bribery scheme. And again, it was a long-term investigation with different methods used that were unable to develop a full case. And I would cite, in particular, the government relied on McGuire. The standard for an effective case is one based on reasonable doubt, not just one that leads to a charging decision. So based on those reasons, Your Honor, we would say that the necessity determination was incorrect by the district court, as well as the adverse Franks rulings. And I'll reserve the rest of my time. Thank you. All right. I'll give you two minutes. Good morning, Your Honors. Grant Willey on behalf of Mr. Panisopoulos. There are three topics that I'd like to address or that I'm prepared to address today regarding recklessness, 2518.3b and c, so it's probable cause for future phone calls and necessity. I would handle those together. The third issue would be this materiality on normal probable cause. The court doesn't actually need to address that because each of the subsections under 2518.3 are necessary for the issuance of a wiretap. So the failure in any one of those is enough to affirm the lower court. I'd like to address materiality of future phone calls first. Analyzing a warrant is a matter of common sense. In this case, when we look at what was reported about Fuentes, you know, I have some axioms that pop in my head. Fool me once, shame on you. Fool me twice, shame on me. Or even simpler, once a liar, always a liar. In this case, the government was affirmatively asking to listen to phone calls in the future between Fuentes and the treasurer. To justify that request, they pointed to the past. They said, in the past, Fuentes claimed to speak with the treasurer and he successfully manipulated the auction and this newspaper regarding a delinquent pharmacy. On those three points, we know that that is now false. And that is a fatal error for the government's case. Because once those errors are corrected in the affidavit, there is no articulated fact in the four corners of the affidavit that they can point to and say, this salvages our earlier reasoning. This, you know, resuscitates why we should believe Fuentes when he says he's talking to the treasurer. Instead, in the parlance of Frank's, what we're left is, it is no longer appropriate to believe the claim or inferences or conclusions that the proposing in her affidavit. It's no longer appropriate to believe what she's concluding or putting forward to the judge. Or put more simply, once a liar, always a liar. On materiality, I want to directly address Kimbrough. The way I read the government's briefing, it sounds like they're setting up a false dichotomy. Those are two different issues, you know, the mens rea for a conviction and then probable cause of future phone calls on a wiretap. The difference is this. A wiretap is perspective. The government is under an obligation to show the court probable cause that there are going to be calls in the future, regardless of what, you know, just relevant evidence. It doesn't matter if it's about, you know, the intent or following through on the conspiracy. In contrast, Kimbrough is in the procedural posture of post-conviction, sufficiency of the evidence, and it's retrospective. It's looking back at a certain point in time in the past and saying, at that time in the past, did the defendant form the requisite mens rea to be convicted of bribery? And in that context, it doesn't matter if, you know, the fellow intended to follow through. But these are two completely separate issues, and they're not mutually exclusive. So it's fairly easy to take the facts in Kimbrough and imagine how that could have turned into a wiretap. Say the field representative claimed he was talking to the congresswoman or the city attorney in that case. You know, we could see how they might, you know, if they continue the investigation, they could have spun up a wiretap in Kimbrough, despite the fact that he had no intent to follow through. It's also easy to look at the facts in Kimbrough and say, if we inject what we have in this case, say the field representative was claiming to talk to the congressperson, but the agent had evidence in hand showing that was false, and therefore there would be no reason to follow through with a wiretap, to hear phone calls between the field representative and the congressperson. So again, those are not mutually exclusive issues. Um, counsel, let me ask you about Kimbrough. Uh, let's say the affidavit in this case were supplemented by the, um, the information that one would have liked to be there with regard to Arizona law. Wouldn't there be a theory of, of probable cause supporting bribery? And the theory being this cut, cut the treasurer out of it. Just think of Mr. Fuentes. Now, if Mr. Fuentes promises the CI that he can do something or falsely represents that the treasurer is working with him, even if it's a hundred percent false, can't that support a, a bribery charge? Absolutely. And so accepting that hypothetical, perhaps you get to 25, 18, 3a, which is normal, probable cause that we deal in all other warrant contexts, but it doesn't necessarily get us to 25, 18, 3b, whether there's going to be phone calls. This is like the nexus requirement for warrants. Are we, if we allow the government to listen to those phone calls in the future, are they going to hear Fuentes speaking with another human being about that offense? And that's what we're missing. That's why this is sort of a, once we, you know, inject the truth here and we know that Fuentes is not actually speaking with the treasurer, no matter how much more evidence they build up against him about running a scheme or pulling the wolves over the confidential sources eyes, which could be bribery. They could have stopped right there and brought a case against him, but instead they hid these facts showing that Fuentes was not in fact talking to anyone else in order to get a wiretap to listen to his phone calls with other people. Your Honor also raised recklessness. I'd like to address that. So this case is most like standard as opposed to Dozier or Ruiz. In Dozier there was some mention of negligence. In this case, the agent doubled down on what she had written in her affidavit. So think of all the factors relevant to whether this was a negligent issue. This was an agent with 15 years of experience. She was a public corruptions law enforcement officer. Those are supposed to be our knights in shining armor, the most competent, the most detail oriented, the most ethical. She acknowledged, testified that she understood her duties to the court, to know the law. This is a wiretap where there is a statutory obligation to give a full and complete accounting of the investigation that had occurred. So this is the individual that we're dealing with. Now we can look at the evidence in her possession. So she possessed that newspaper public notice. There was some talk earlier about how Arizona law is complicated. If you look at the first page of that newspaper notice, it explains in layman terms exactly what was going on, what taxes were at issue. Very clear. She didn't need to know the law, although she testified she did because it's all spelled out on that very first page of that she talks about in the affidavit. And yet, you know, doesn't explain fully. In addition to that newspaper, she has a tax payment history, putting those two things together. She testified also that she understood that by statute, that pharmacy was not bound for the auction, was not supposed to be in the newspaper. Despite that acknowledgement though, she doubled down on her affidavit. She said there were no corrections that she would make, and therefore this is not an instance of negligence. Instead, this case is more like standard, where we see selective omission. The agent managed to write all about the auction, the newspaper, this pharmacy, all of these topics in depth, dozens and dozens of pages, and yet the entire time we see she came very close to telling the whole story, but always seemed to omit the facts necessary to know the whole story, to understand what tax year was at issue, to understand that the pharmacy was not eligible for a lien and whatnot. And so that selective omission shows a pattern that is indicative of recklessness. I think it would be hard to tell that whole story and, you know, just accidentally miss out, you know, leave out those facts. In addition, Standard talks about, I think the best way to describe it is they talk about the power or import of the inference that the false inference that's created by the omissions. And I think the simple way to think about that is this was a topic that the agent was keenly aware of. This was sort of went to the heart of the communication that she was trying to share with the judge. In other words, it's something she's paying attention to, not some tangential issue where they might have, like Ruiz, they had a confidential source and then missed some of the credibility problems with him. No, this is when these omissions went to, you know, the heart of what she was trying to communicate. And then in addition, there are other omissions, falsities in that affidavit that the government does not contest. So there was the confidential information, allegations and conflicts of interest. The affidavit. But the key omission is the delinquency notice. On appeal, because that's the only thing that they challenge. My point is that if this affidavit is filled with so many omissions, it's also indicative of recklessness. That was sort of the point that I was trying to make. So we're in clear air land and, you know, looking at the record and seeing if there's any way, you know, to arrive at, you know, definitive assurance that some mistake was made. And that's why I'm going through the entire record. I'm not sure if the judge and his order went into exactly that amount of detail, but I'm just indicating that the entire. Right. I just want to make sure that you agree that our focus as to the reckless disregard is on the findings made by the district court. Absolutely. Your Honor. Yeah, absolutely. Thank you. One additional point that I'd like to note is that on May 7th, during that communication, Fuentes said that the pharmacy was under escrow, indicating that the entirety of the scheme was done. So that's essentially a staleness issue. And I think that also played into the lower court's decision, finding that there was no probable cause that there would be future phone calls. You know, this whole thing was dead in the water by the time that they were applying for a wiretap. That was May 7th. Lastly, on official acts, which, again, the court doesn't need to address in order to affirm the lower court. You know, the government has struggled to articulate a complete theory as to what it's thinking about this alternative official act would be. Again, I think part of the difficult deal is there was, in fact, no tax lien scheme occurring. You know, anything that was happening ended on May 7th when the property purportedly went into escrow. But the government has had two bites at the apple to present facts on this issue. If the agent had truly been thinking about the possibility of some other scheme, why wouldn't she explain that to the judge in her affidavit? Why not tell the whole story about what he said about the auction isn't right, what he said about the newspaper isn't right, what he said about the eligibility of a tax lien for the pharmacy wasn't right? But you know what? I still have an articulated fact here showing that there's something else going on with notice. And instead the affidavit relies on that line of reasoning I provided earlier. Fuentes said he was talking to the treasurer in the past and therefore we can presume he's talking to the treasurer in the future. We also presented expert testimony and a declaration from him indicating how these alternative hypotheticals don't account for the totality of everything that Fuentes said. So Fuentes, for example, this theory about waylaying some notice that's not going to occur for another 10 months. If that were the case, what would the point be? Because Fuentes was already talking to the property owner who was complaining about his taxes. The property owner knows about his taxes. Why are we talking about waylaying notice? Or in the alternative, if Fuentes was playing three-dimensional chess and had some other scheme occurring, then why was he secretly confiding in the confidential source spinning up some other hoax? My point is just that, you know, the government is trying hard to articulate something else here, but they can't articulate a complete theory based on facts articulated within the affidavit to finish that story. Lastly, briefly, you know, there are limitations to the definition of an official act. It has to be a decision or action, so not a ministerial item, not just providing information, which would be the Valdez case out of the D.C. Circuit that I cited. And it also has to be something reasonable to believe. And the lower court did not err in that sort of factual conclusion that there wasn't anything specific articulated in this affidavit. In the end, Your Honors, what I see here is an investigation that hit a dead end. Sometimes law enforcement hits a dead end, and that's okay. And they could have perhaps charged at the moment. But instead, we see that they wrote an affidavit, submitted it under oath, with critical omissions about the very point that they were trying to communicate. And just as a policy matter, it's very important that the lower court's ruling is upheld. Thank you. Thank you, counsel. Thank you, Your Honors. Earlier, a point was mentioned about the use of the telephone in terms of the probable cause. I would cite to 2 ER 247 and 248. That would be a specific example where Fuentes is using a telephone, the target telephone, and saying, it's okay, everything is fine. So I wanted to clarify that part of the record. But I do want to make a point, though, that and then in terms of the remainder of the balance, we would say that under Kimbrough, McDonald, there was sufficient, ample probable cause that there was a bribery scheme. Nothing in those cases or the wiretap statute would have prevented finding a probable cause. And the omission identified by the district court doesn't change that analysis. The court is correct that the focus of the analysis is on that pharmacy property allegation alone and nothing else that was mentioned. And based on, again, the case law and the government's briefing, there was probable cause even with the omission identified. So for those reasons, under both Frank's and the Wiretap Act, we respectfully request reversal. Thank you. Thank you very much to both counsel for your arguments this morning. The matter is submitted and we are in recess until Thursday morning. All rise.
judges: NGUYEN, VANDYKE, Huie